RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4841-15T3
 A-4991-15T3

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

 Plaintiff-Respondent,

 v.

J.W. and J.J.,

 Defendants-Appellants.

_________________________________

IN THE MATTER OF THE GUARDIANSHIP
OF X.J.W.,

 Minor.

_________________________________________________________

 Argued May 16, 2017 – Decided June 12, 2017

 Before Judges Fisher, Ostrer and Moynihan.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Family Part, Essex
 County, Docket No. FG-07-145-16.

 Eric J. Meehan, Designated Counsel, argued the
 cause for appellant J.W. (Joseph E. Krakora,
 Public Defender, attorney; Mr. Meehan, on the
 brief).
 Ryan T. Clark argued the cause for appellant
 J.J. (Joseph E. Krakora, Public Defender,
 attorney; Mr. Clark, Designated Counsel, on
 the brief).

 Mary Harpster, Deputy Attorney General, argued
 the cause for respondent (Christopher S.
 Porrino, Attorney General, attorney; Andrea M.
 Silkowitz, Assistant Attorney General, of
 counsel; Natalie Behm, Deputy Attorney
 General, on the brief).

 Randi Mandelbaum, Designated Counsel, argued
 the cause for minor (Joseph E. Krakora, Public
 Defender, Law Guardian, attorney; Ms.
 Mandelbaum, on the brief).

PER CURIAM

 J.W. is the biological mother of X.J.W., a minor born in

November 2004; J.J. is X.J.W.'s biological father. The New Jersey

Division of Child Protection and Permanency (the Division) filed

a guardianship complaint naming both parents as defendants. Judge

Linda Lordi Cavanaugh heard testimony from five witnesses during

a three-day trial, and entered a judgment of guardianship

terminating defendants' parental rights and awarding guardianship

to the Division. Both defendants filed separate appeals that we

calendared back-to-back, and now consolidate so that these appeals

may be decided by a single opinion. Each defendant claims that

the judge's conclusions were not supported by clear and convincing

evidence. We disagree and affirm.

 2 A-4841-15T3
 Judge Cavanaugh recognized the import of a trial judge's

decision to terminate a defendant's fundamental and highly

protected parental rights. Santosky v. Kramer, 455 U.S. 745, 753-

54, 102 S. Ct. 1388, 1394-95, 71 L. Ed. 2d 599, 606 (1982); In re

Guardianship of K.H.O., 161 N.J. 337, 346-47 (1999). The

Legislature has declared, as a matter of public policy, "[t]hat

the preservation and strengthening of family life is a matter of

public concern as being in the interests of the general welfare."

N.J.S.A. 30:4C-1(a).

 Parental rights, however, are not inviolable. N.J. Div. of

Youth & Family Servs. v. A.W., 103 N.J. 591, 599 (1986). "The

balance between parental rights and the State's interest in the

welfare of children is achieved through the best interests of the

child standard." K.H.O., supra, 161 N.J. at 347. N.J.S.A. 30:4C-

15-1(a) sets forth four factors that the Division must prove by

clear and convincing evidence before parental rights may be

terminated:

 (1) The child's safety, health, or development
 has been or will continue to be endangered by
 the parental relationship;

 (2) The parent is unwilling or unable to
 eliminate the harm facing the child or is
 unable or unwilling to provide a safe and
 stable home for the child and the delay of
 permanent placement will add to the harm. Such
 harm may include evidence that separating the
 child from his resource family parents would

 3 A-4841-15T3
 cause serious and enduring emotional or
 psychological harm to the child;

 (3) The division has made reasonable efforts
 to provide services to help the parent correct
 the circumstances which led to the child's
 placement outside the home and the court has
 considered alternatives to termination of
 parental rights; and

 (4) Termination of parental rights will not
 do more harm than good.

See also A.W., supra, 103 N.J. at 604-11. These four standards

"are not discrete and separate; they relate to and overlap with

one another to provide a comprehensive standard that identifies a

child's best interests." K.H.O., supra, 161 N.J. at 348.

 Judge Cavanaugh heeded the mandate of the Court in conducting

a fact sensitive analysis of the factors, specific to each

defendant. Ibid. We affirm substantially for the reasons set

forth in her insightful, comprehensive and well-reasoned ninety-

six-page opinion.

 As to the first statutory prong, Judge Cavanaugh found that,

after two prior removals of X.J.W. by the Division, and the

subsequent reunification of the child with J.W. following her

compliance with services offered by the Division, J.W. left X.J.W.

in October 2014 and moved from New Jersey to "start a new life."

Remarkably, she left X.J.W. in the care of J.J., knowing he had

physically abused the child, was barred from having unsupervised

 4 A-4841-15T3
visitation, had no source of income, and lived with his elderly

grandmother who was incapable of caring for X.J.W. From the day

she left until the day the court handed down its opinion on June

30, 2016, J.W. had no contact with X.J.W.; nor did she plan for

her care or avail herself of any services ordered by the court.

J.W. disappeared and provided no contact information to the

Division, which was unable to find her. Judge Cavanaugh commented,

"What is striking to this court is that she provided absolutely

no definitive information about anything."

 J.J., who was incarcerated at the time of the trial, had been

in and out of prison several times during X.J.W.'s lifetime. He

had neither stable employment, nor stable housing. He had an

admitted substance abuse problem. He failed to maintain a

consistent visitation schedule with X.J.W. The judge also found

that "[a]t no time since [X.J.W.] was born, has [J.J.] been a

stable person in her life." He failed to comply with court-ordered

services: substance abuse treatment, parenting classes and

individual therapy.

 Judge Cavanaugh considered other proofs besides this

compelling sampling, including testimony from the caseworker and

 5 A-4841-15T3
the "uncontroverted" expert1 reports and testimony about the harm

X.J.W. suffered because of "the actions and inactions of her mother

and father." The evidence found by the judge clearly and

convincingly established the first prong of the statutory

requirements for termination.

 The judge's conclusions relevant to the first prong

dovetailed with her findings supporting the second prong, a common

occurrence resulting from the overlap of these two factors. N.J.

Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 88

(App. Div. 2006), certif. denied, 190 N.J. 257 (2007). The judge

found neither parent demonstrated the ability or willingness to

change behavior that was detrimental to X.J.W. J.W. left her

daughter and remained incommunicado. J.J. continued the pattern

that existed throughout X.J.W.'s life and did nothing "to make

himself a more viable parenting option." Judge Cavanaugh further

found, from Dr. Nadelman's testimony and report, that X.J.W.

"desperately needs a parent now," to address her urgent needs as

a "wounded child." The judge concluded both parents were less fit

in June 2016 than they had been when X.J.W. was removed in October

1
 The Division called Dr. Mark David Singer, who was qualified by
the judge as an expert in psychology and bonding. Dr. Alice S.
Nadelman was called by the law guardian; she was found to be an
expert in "clinical child psychology with a special expertise in
child abuse and neglect."

 6 A-4841-15T3
2014. Addressing the impact of a delay in permanent placement,

the judge sagely observed, "Time for [X.J.W.] is a precious, and

fleeting, commodity."

 The court, in considering evidence related to the third prong,

noted both parents refused or failed to comply with court-ordered

services available through the Division. She also reviewed the

Division's efforts to find familial options to care for X.J.W.

Judge Cavanaugh found "there are no alternatives to termination

of parental rights." She considered and agreed with the expert

opinions that adoption would be in X.J.W.'s best interest.

 Careful consideration was given to the fourth prong. Judge

Cavanaugh weighed the evidence proffered by J.J. to prove his

positive efforts to parent X.J.W. She ultimately found that

evidence to be outweighed by J.J.'s "failure . . . to provide even

minimal parenting to [his] child." She considered Dr. Singer's

opinion that the termination of J.J.'s parental rights would not

result in "significant and enduring harm" to X.J.W.

 The judge also reflected that X.J.W. had been removed from

J.W.'s care three times, and that the child had spent almost half

her life in foster care. Notwithstanding the child's yearning to

be with her mother, and J.W.'s professed desire to be reunited

with X.J.W., the judge found J.W.'s choice to live life apart from

her daughter, and her failure to take steps to care for the child,

 7 A-4841-15T3
supported Dr. Singer's opinion that a failed reunification "would

result in further trauma and harm" to X.J.W. Judge Cavanaugh did

not discount that the child "may suffer some loss from severing

[parental] ties." She found, however, termination and subsequent

adoption would give X.J.W. needed stability, consistency and

permanency; that the child needed a family that could help her

heal. As the judge said, X.J.W. "deserved better."

 The thoughtful findings Judge Cavanuagh made as to each of

the four prongs, as they related to J.W. and J.J., were supported

by credible, clear and convincing evidence, and are entitled to

our deference. N.J. Div. of Youth and Family Servs. v. F.M., 211

N.J. 420, 448-49 (2012); Cesare v. Cesare, 154 N.J. 394, 413

(1998).

 J.J. also argues that he received ineffective assistance of

trial counsel. R. 2:10-6; R. 5:12-7.

 In order to establish a case of ineffective assistance of

counsel, defendant must demonstrate a reasonable likelihood of

success under the two-pronged test established by Strickland v.

Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed.

2d 674, 698 (1984), and adopted by our Supreme Court in State v.

Fritz, 105 N.J. 42, 58 (1987). N.J. Div. of Youth and Family

Servs. v. B.R., 192 N.J. 301, 308-09 (2007). A defendant must

first show that counsel was deficient or made egregious errors,

 8 A-4841-15T3
so serious that counsel was not functioning effectively as

guaranteed by the Sixth Amendment of the United States

Constitution. Strickland, supra, 466 U.S. at 687, 104 S. Ct. at

2064, 80 L. Ed. 2d at 693. A defendant must also demonstrate that

there exists "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have

been different." Id. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at

698. There is a strong presumption that counsel rendered adequate

assistance and made all significant decisions in the exercise of

reasonable professional judgment. Id. at 690, 104 S. Ct. at 2066,

80 L. Ed. 2d at 695. Further, because prejudice is not presumed,

Fritz, supra, 105 N.J. at 60-61, defendant must establish "how

specific errors of counsel undermined the reliability" of the

court's findings. United States v. Cronic, 466 U.S. 648, 659

n.26, 104 S. Ct. 2039, 2047 n.26, 80 L. Ed. 2d 657, 668 n.26

(1984).

 Defendant offers two bases for his claim of ineffective

assistance of counsel: (1) counsel failed to make a closing

argument and (2) counsel "did not bring up or cross-examine

witnesses based on favorable evidence in the Division's own

records."

 Notwithstanding defendant's failure to state what counsel

should have said in summation, and his failure to specify what

 9 A-4841-15T3
questions should have been asked of named witnesses, we find that

even if defendant's contentions were true, the outcome of this

case would not have been different; we deny defendant's claim.

B.R., supra, 192 N.J. at 311.

 Defendant points to twenty-six "facts" that, he argues, could

have been used as fodder for cross-examination of the witnesses

who testified at trial. We agree with the law guardian's

classification of the proffered potential evidence in four

categories: (1) instances of positive bonding between J.J. and

X.J.W.; (2) J.J.'s expressions of interest in caring for X.J.W.;

(3) information about services provided by the Division to J.J.;

and (4) information about X.J.W.'s experiences in foster care.

 The six instances of positive bonding are countered by a

plethora of evidence that J.J. played no stable role in his

daughter's life. Defendant's six expressions of interest in caring

for X.J.W. are belied by his failure to take actual steps to

accomplish that stated desire. Defendant also ignores the rift

caused by his treatment of X.J.W., a rift so deep that X.J.W. did

not want to visit with her father. The judge's findings regarding

J.J.'s failings as a parent far outweigh the scant potential

evidence defendant offers regarding those two issues.

 Defendant cites five areas where he either criticizes the

Division for services it provided or failed to provide, or where

 10 A-4841-15T3
he offers reasons why he did not utilize those services. The

evidence relating to J.J.'s failure to comply with court-ordered

services was vast. His complaint about the distance he had to

travel to the service providers is countered by the Division's

provision of his transportation to the providers.

 Finally, defendant's nine complaints about foster care are

irrelevant. The court intended for X.J.W. to be adopted. The

child's treatment in foster care had no bearing on the judge's

final decision.

 The overwhelming evidence, painstakingly detailed by Judge

Cavanaugh in her opinion, leaves no doubt that even if counsel's

representation was deficient because she did not introduce

defendant's twenty-six claims, the result here would still be the

same; J.J.'s parental rights would still be terminated.

 We also find that counsel's decision not to make a closing

argument had no bearing on the outcome of this case. This was a

bench trial by an attentive judge who obviously considered all of

the evidence presented. A summation would not have swayed Judge

Cavanaugh from the result she reached after her thorough

examination of the proofs.

 Affirmed.

 11 A-4841-15T3